1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7    JONATHAN HURTADO,                          Case No. 16-cv-05608-JST

8              Plaintiff,                        **ORDER GRANTING IN PART AND
                                                 DENYING IN PART CROSS-MOTIONS**
9         v.                                     **FOR SUMMARY JUDGMENT AND
                                                 REMANDING CASE FOR FURTHER**
10   NANCY A. BERRYHILL,                         **PROCEEDINGS**

11             Defendant.                        Re: ECF Nos. 17, 25

12

13       Plaintiff Jonathan Hurtado seeks judicial review of the Social Security Administration

14   Commissioner's denial of his application for disability benefits.[1]  The parties' cross-motions for

15   summary judgment are now before the Court.  ECF Nos. 17, 25.  The Court will grant both

16   motions in part, deny them in part, and remand this case for further proceedings.

17   **I.      BACKGROUND**

18       **A.      Factual Background**

19       Jonathan Hurtado is a resident of Oakland, California.  ECF No. 14, Administrative Record

20   ("AR") 108.  He was born on September 17, 1960, and reports that he became impaired in January

21   1990.  AR 357-58.  He claims to suffer from "psychosis, cognitive disorder, substance use

22   disorder, osteoarthritis of the shoulder, chronic knee pain, hepatitis C, chronic skin infections,

23   hypertension, and scoliosis of the thoracic spine."  AR 107.

24       Hurtado struggled academically, completed eighth grade, and then dropped out of school

25

26   ─────────────────────
     [1] Although Defendant Nancy A. Berryhill is no longer the agency's Acting Commissioner, "[i]n
27   accordance with the agency's Order of Succession, [she] continues to lead the Social Security
     Administration as [it] await[s] the nomination and confirmation of a Commissioner."  Nancy A.
28   Berryhill, Deputy Commissioner for Operations, https://www.ssa.gov/agency/commissioner.html.
     The position of Commissioner is currently vacant.

1    during the ninth grade. AR 109, 1049. He was frequently incarcerated between 1981 and 2011,

2    and his work history is sparse as a result. AR 1049-50; AR 111. Hurtado used to sweep and serve

3    food in the prison kitchen. AR 1049. Outside of prison, he held a job as machine operator for

4    three months in 1978, worked part-time for five to eight months at the St. Vincent de Paul Society,

5    and did occasional work holding an advertising sign for a cell phone company. *Id.*; AR 109-12.

6    He also occasionally sweeps at a church where his stepfather is a pastor. AR 111. He lives with

7    his mother, who supports him with her Social Security income. AR 108.

8          Hurtado has a history of substance abuse. He started using alcohol and marijuana at age 12

9    and used PCP daily from ages 14 to 21, when he was first incarcerated. AR 1050. He

10    subsequently used heroin, cocaine, and crack cocaine. *Id.* He has been on methadone since his

11    release from prison in 2011 but has relapsed several times. *Id.*; *see also, e.g.*, AR 1101, 1233.

12          In 1994, following three days of cocaine use, he was admitted to John George Psychiatric

13    Pavilion for drug-induced paranoid psychosis. AR 1160. In 1999, a prison psychiatrist assessed

14    Hurtado as having no acute psychiatric disorder but probable antisocial personality disorder.

15    AR 609. In 2010, he referred himself to prison psychologists, claiming that he heard voices and

16    suffered from paranoia. AR 608. The doctor concluded that Hurtado presented as stable and did

17    not meet the criteria for inclusion in the prison's mental health treatment program, but Hurtado

18    was told he could refer himself again in the future if symptoms persisted. *Id.* The record includes

19    no indication that he did so. After his release from prison, Hurtado began mental health treatment

20    with Dr. Rene Thomas in April 2014. AR 1219. He reported hearing voices for the past five

21    years, approximately two to three times per week. *Id.* Thomas diagnosed Hurtado with psychosis,

22    polysubstance abuse, and cognitive disorder, and he prescribed Risperidone, the first time Hurtado

23    was given a psychotropic medication. AR 1220.

24          Hurtado tested positive for hepatitis C in 2003. AR 597. Between 2006 and 2014,

25    Hurtado was seen several times for treatment of physical ailments, including bone fractures,

26    shoulder pain, and pain and swelling in the leg, ankle, and foot. *E.g.*, AR 686, 689, 811, 1201,

27    1209. His most recent imaging, in March 2014, showed a normal left clavicle but osteoarthritis in

28    the left humeral joint. AR 1212-13. Hurtado claims that his left shoulder pain and arthritis

1    prevent him from lifting anything; that hepatitis C makes him tired, nauseated, and anxious; and

2    that he cannot stand for long periods of time due to knee and back pain.  AR 432.

3    **B.    Procedural History**

4    Hurtado filed for Supplemental Security Income on September 24, 2012.  AR 357-69.  His

5    application was denied initially and upon reconsideration.  AR 170-74, 180-84.  He appeared

6    before Administrative Law Judge Katherine Loo ("ALJ") on August 21, 2014.  AR 102-30.  She

7    continued the hearing because she wanted Hurtado to have a consultative exam "on his mental

8    state, since he hasn't been using [drugs], to see what the difference is, if any."  AR 128.  After that

9    exam, Hurtado appeared for a second hearing before the ALJ on December 5, 2014.  AR 85-101.

10   On January 20, 2015, the ALJ issued an unfavorable decision concluding that Hurtado was not

11   disabled within the meaning of the Social Security Act.  AR 56-77.  The Appeals Council denied

12   his request for review on August 2, 2016.  AR 1-4.

13   Social Security regulations set out a five-step process for determining whether a claimant

14   is disabled within the meaning of the Social Security Act.  *Tackett v. Apfel*, 180 F.3d 1094, 1098

15   (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).  The process is sequential, meaning that if a

16   claimant is found to be either disabled or not disabled at any step, there is no need to consider

17   subsequent steps.  *Id.*  The five steps are: (1) "Is the claimant presently working in a substantially

18   gainful activity?"; (2) "Is the claimant's impairment severe?"; (3) "Does the impairment 'meet or

19   equal' one of a list of specific impairments described in the regulations?"; (4) "Is the claimant able

20   to do any work that he or she has done in the past?"; and (5) "Is the claimant able to do any other

21   work? . . . . If the claimant is able to do other work, the Commissioner must establish that there are

22   a significant number of jobs in the national economy that claimant can do."  *Id.* at 1098-99.  "The

23   burden of proof is on the claimant as to steps one to four.  As to step five, the burden shifts to the

24   Commissioner."  *Id.* (footnote omitted).

25   The ALJ followed this process in making her disability determination.  First, she found

26   that Hurtado had not engaged in substantial gainful employment since his September 12, 2012

27   application date.  AR 61.  Second, she found that Hurtado suffered from "osteoarthritis of the left

28   humeral joint, polysubstance dependence in reported remission, and a possible cognitive disorder

3

or borderline intellectual functioning." *Id.* Third, she found that none of these impairments met the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 62. Fourth, she found that Hurtado had the residual functional capacity to perform work at the medium level; "can lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand and walk for six hours, and sit without restriction"; "can frequently climb, balance, stoop, kneel, crouch, and crawl"; "can frequently reach, handle, finger, and feel with the left upper extremity, and is without manipulative limitations on the right"; and is limited to "simple, routine tasks." AR 68. She also found that Hurtado had no past relevant work. AR 75. Finally, she found that a significant number of jobs existed in the national economy that he could perform. AR 76. The ALJ concluded that Hurtado was not "under a disability, as defined in the Social Security Act." AR 77.

## II.  JURISDICTION

This Court has jurisdiction to review the Commissioner's final decisions pursuant to 42 U.S.C. § 405(g).

## III.  LEGAL STANDARD

A reviewing court "may set aside a denial of benefits only if [it is] not supported by substantial evidence in the record or if it is based on legal error." *Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1084-85 (9th Cir. 2000). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). It is "more than a scintilla but less than a preponderance." *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997). "Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the ALJ." *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992). However, courts "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).

An ALJ's decision may not be reversed "on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). An error "is harmless where it is inconsequential to the ultimate nondisability determination. In other words, in each case we look at the record as a

United States District Court
Northern District of California

1    whole to determine whether the error alters the outcome of the case." *Id.* at 1115 (9th Cir. 2012)

2    (internal quotation marks and citations omitted).

3    **IV.   DISCUSSION**

4    Hurtado contends that the ALJ erred by: (1) in step two, failing to include psychosis as a

5    severe impairment, ignoring his learning disability, and classifying his cognitive disorder and

6    borderline intellectual functioning as "possible"; (2) improperly rejecting certain medical opinions

7    by treating and examining sources; (3) in step three, failing to find that his impairments meet

8    Listing 12.05; (4) improperly finding his testimony to be not credible; (5) determining a residual

9    functional capacity ("RFC") that is not supported by substantial evidence; and (6) in step five,

10   relying on vocational expert testimony based on an incomplete hypothetical and improperly

11   applying the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2.  The Court turns

12   first to the ALJ's consideration of Hurtado's credibility and her evaluation of medical testimony

13   because these claimed errors permeate the ALJ's entire decision.

14   **A.   Credibility Determination**

15   To determine whether a claimant's testimony regarding subjective pain or symptoms is

16   credible, an ALJ must first determine whether the claimant has presented objective medical

17   evidence of an underlying impairment that "could reasonably be expected to produce the pain or

18   other symptoms alleged." *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)

19   (internal quotation marks omitted).  "If the claimant satisfies the first step of this analysis, and

20   there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the

21   severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'"

22   *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d

23   1273, 1281 (9th Cir. 1996)).

24   Here, the ALJ found "that the claimant's medically determinable impairments could

25   reasonably be expected to cause some of the alleged symptoms and limitation," thereby satisfying

26   the first part of the analysis.  AR 69.  Because the ALJ did not cite any evidence of malingering,

27   Hurtado's testimony about the severity of his symptoms can only be rejected by specific, clear and

28   convincing reasons.  *Garrison*, 759 F.3d at 1014-15.  The ALJ's opinion is insufficient to meet

5

United States District Court
Northern District of California

1   this standard.  She concluded that, "the claimant's statements concerning the intensity, persistence

2   and limiting effects of these symptoms are not credible for the reasons explained in this decision."

3   AR 69.  **Her decision, however, does not go on to actually state the reasons.**

4           The Ninth Circuit has rejected the use of this boilerplate language, without more, to

5   support an adverse credibility finding.  For example, in *Treichler v. Commissioner of Social*

6   *Security Administration*, the court held that it is insufficient to make "only the single general

7   statement that '*the claimant's statements concerning the intensity, persistence and limiting effects*

8   *of these symptoms are not credible* to the extent they are inconsistent with the above residual

9   functional capacity assessment.'"  775 F.3d 1090, 1102-03 (9th Cir. 2014) (emphasis added).  The

10  court noted that "ALJs routinely include this statement in their written findings as an introduction

11  to the ALJ's credibility determination.  After making this boilerplate statement, the ALJs typically

12  identify what parts of the claimant's testimony were not credible and why."  *Id.* at 1103 (citations

13  omitted).  But in this case, as in *Treichler*, the ALJ simply "summarized the medical evidence and

14  indicated what weight [s]he assigned to the various reports."  *Id.* at 1097.  This was not harmless

15  error.  *Id.* at 1103.  "The ALJ must identify the testimony that was not credible, and specify 'what

16  evidence undermines the claimant's complaints.'"  *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715,

17  722 (9th Cir. 1998)).  Even though the ALC "summarized the evidence supporting [her]

18  determination," the Court cannot "reasonably infer that the ALJ rejected [Hurtado's] testimony to

19  the extent it conflicted with that medical evidence. . . .  [W]e cannot substitute our conclusions for

20  the ALJ's, or speculate as to the grounds for the ALJ's conclusions."  *Id.*; *see also Brown-Hunter*

21  *v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) ("Although the ALJ summarized a significant portion

22  of the administrative record in support of her RFC determination, providing a summary of medical

23  evidence in support of a residual functional capacity finding is not the same as providing clear and

24  convincing reasons for finding the claimant's symptom testimony not credible.").

25          **B.      Evaluation of the Medical Opinion Evidence**

26          Hurtado contends that the ALJ improperly rejected the medical opinions of four medical

27  professionals: nurse practitioner Corey Bohman, psychiatrist Rene Thomas, psychologist Jodi

28  Snyder, and psychologist Elizabeth Pearce.  Bohman and Thomas treated Hurtado, while Snyder

1    and Pearce performed consultative exams.

2    "As a general rule, more weight should be given to the opinion of a treating source than to

3    the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

4    1995). However, the standard for rejecting an opinion from a treating or examining medical

5    source is the same: An uncontroverted opinion may be rejected only for clear and convincing

6    reasons, and a controverted opinion "can only be rejected for specific and legitimate reasons that

7    are supported by substantial evidence in the record." *Id.* at 830-31. The opinion of a nurse

8    practitioner or other non-acceptable medical source is entitled to less deference and may properly

9    be discounted if the ALJ gives "germane" reasons for doing so.[2] *Molina*, 674 F.3d at 1111

10   (internal quotation marks omitted).

11   The Court finds no error in the ALJ's discussion of Thomas's diagnosis of psychosis.

12   Hurtado argues that the ALJ rejected that diagnosis "without discussion." ECF No. 17 at 17. This

13   contention is without merit. In a lengthy paragraph discussing Thomas's findings, the ALJ notes

14   that "Dr. Thomas diagnosed the claimant with psychosis not otherwise specified, polysubstance

15   abuse ('?ongoing?') [sic], and cognitive disorder based on significant short-term memory

16   impairment," but she does not say that she rejects that diagnosis, or even that she is giving

17   Thomas's opinion little or no weight.[3] AR 74.

18   However, the ALJ did err in rejecting the opinions of Bohman, Pearce, and Snyder. She

19   rejected the opinions of Bohman and Pearce because she found their opinions to be based

20   "entirely" or "almost entirely" on Hurtado's self-reports. AR 72. Likewise, she concluded that

21   "[l]ittle weight can be given to Dr. Snyder's report or opinion because of the inconsistent and

22

23   [2] "Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing
     court generally applies the law in effect at the time of the ALJ's decision." *Rose v. Berryhill*, 256

24   F. Supp. 3d 1079, 1083 n.3 (C.D. Cal. 2017). Under regulations in effect at the time of the ALJ's
     decision, a nurse practitioner was considered an "other source" of information and not an

25   "acceptable medical source." 20 C.F.R. § 404.1513(a), (d).

26   [3] Hurtado correctly observes that the ALJ concluded that the record "does not support a diagnosis
     of a psychotic disorder" under Listing 12.03, but he does not argue that this conclusion was

27   erroneous. *See* AR 66-67. To the contrary, as to step three of the disability evaluation process,
     Hurtado argues only that the ALJ erred by failing to find that his impairments satisfied Listing

28   12.05; he does not argue that his impairments should have been found to satisfy Listing 12.03.
     ECF No. 17 at 20-22.

1  defective information provided to her by the claimant." AR 74. But "questioning the credibility

2  of the patient's complaints where the doctor does not discredit those complaints and supports his

3  ultimate opinion with his own observations" is not a clear and convincing reason to reject a

4  medical opinion. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).

5  Defendant points to nothing in the record indicating that Pearce or Snyder "disbelieved

6  [Hurtado's] description of [his] symptoms, or that [they] relied on those descriptions more heavily

7  than [their] own clinical observations." *Id.* at 1200. Moreover, as noted above, the ALJ did not

8  sufficiently support her finding that Hurtado's statements were not credible. Rejecting these

9  medical opinions because they were based on Hurtado's statements is therefore not germane, let

10 alone legitimate or clear and convincing. In addition, the record does not support the conclusion

11 that Bohman's decision was based entirely on Hurtado's self-reports; to the contrary, Bohman

12 examined Hurtado five times and reviewed an x-ray that found osteoarthritis in the left shoulder.

13 AR 1201-18, 1223-26, 1229-32. Similarly, Pearce and Snyder based their conclusions on their

14 own observations, review of records, and results of tests they administered, and not just on

15 Hurtado's own comments. AR 1048-62 (Pearce); AR 1236-43 (Snyder).

16      The ALJ rejected the IQ scores reported by Snyder as invalid "based on the absence of any

17 longitudinal evidence, absence of any treatment in the record or while in the general prison

18 population, and the unknown degree of the present, as well as long-term effects of

19 polysubstances." *Id.* at 67-68. "While an ALJ may question the validity of an IQ score, he may

20 not reject them out of hand without substantial evidence supporting his decision to do so."

21 *Applestein-Chakiris v. Astrue*, No. 09CV00009 BTM(WMC), 2009 WL 2406358, at *8 (S.D. Cal.

22 Aug. 5, 2009). "[T]he Ninth Circuit has 'never decided what information is appropriately looked

23 to in deciding [the] validity' of IQ scores. Decisions from other courts indicate that the ALJ may

24 rely on external evidence of a score's invalidity, such as improper testing conditions or a

25 claimant's participation in activities inconsistent with the IQ score." *Jones v. Colvin*, 149 F. Supp.

26 3d 1251, 1258 (D. Or. 2016) (citation omitted) (quoting *Thresher v. Astrue*, 283 F. App'x 473, 475

27

28

8

n.6 (9th Cir. 2008)).  Here, the ALJ relied on neither.[4]  Snyder's report indicates that the scores

"appear to be a valid representation of the claimant's current psychological functioning."  AR

1237-38.  The ALJ's stated reasons for rejecting that opinion do not go to whether the reported

scores accurately represented Hurtado's IQ at the time the test was taken, and the ALJ did not rely

on substantial evidence for finding the scores to be invalid.[5]  Unlike in the unpublished case relied

on by Defendant, there is no evidence here that Hurtado "lowered [his] IQ scores due to a lack of

effort."  *Oviatt v. Comm'r of Soc. Sec. Admin.*, 303 F. App'x 519, 523 (9th Cir. 2008).  While

substance use might make it reasonable for "the ALJ to conclude that [a claimant's] poor

performance in school was not a reflection of a mental deficit," Defendant cites no authority for

the proposition that substance use renders an IQ score invalid.  *Id.*

### C.    Remaining Claims

The ALJ's findings at steps two, three, and five, as well as her determination of Hurtado's

residual functional capacity, were based in part on the ALJ's rejection of Hurtado's testimony and

the opinions of certain medical sources.  Because the ALJ erred in rejecting such testimony,

Hurtado also prevails on his remaining claims.

### D.    Remand

Where "additional proceedings can remedy defects in the original administrative

proceeding, a social security case should be remanded."  *Garrison*, 759 F.3d at 1019 (internal

quotation marks omitted).  A court may "remand to an ALJ with instructions to calculate and

award benefits [where]: (1) the record has been fully developed and further administrative

proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient

---

[4] Defendant argues that the ALJ's rejection of Snyder's reported full score IQ of 56 was valid because that score "would be inconsistent with Plaintiff's past ability to perform some work activity" and was contrary to other findings in the record, including a score of 24 out of 30 on a mini-mental status examination.  ECF No. 25  at 11-13.  But the Court cannot consider reasons proposed by Defendant's briefing and must instead rely on the ALJ's stated reasons for rejecting the IQ scores.  *Pinto*, 249 F.3d at 847.

[5] Contrary to Hurtado's arguments, this conclusion alone does not require a finding that Hurtado's impairments satisfy Listing 12.05.  That listing requires "evidence [that] demonstrates or supports onset of the impairment before age 22."  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05.  The ALJ should address this issue on remand.

reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," which necessarily means that "there are no outstanding issues that must be resolved before a determination of disability can be made." *Id.* at 1020 & n.26.

Remand for additional proceedings is appropriate in this case because several issues must be resolved before a determination of disability can be made. Specifically, the ALJ must consider Hurtado's statements regarding the severity of his impairment if she cannot provide specific, clear and convincing reasons to exclude them. If she chooses to find Hurtado's statements not credible, she must identify the statements with sufficient specificity to allow a reviewing court to evaluate her determination. She must also consider whether her evaluation of the medical opinions is affected by her consideration of Hurtado's statements. And she must conduct a new analysis at steps two, three, and five, as well as determine a residual functional capacity, that considers Hurtado's statements and all medical opinions that are not properly rejected.

## CONCLUSION

Hurtado's motion for summary judgment and the Commissioner's cross-motion for summary judgment are both granted in part and denied in part. The Commissioner's motion is granted, and Hurtado's motion is denied, only as to the ALJ's consideration of the opinion of Dr. Rene Thomas.

This action is hereby remanded to the ALJ for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: March 29, 2018

JON S. TIGAR
United States District Judge